PINE BLUFF IRON WORKS *v.* BOLING.

Opinion delivered May 27, 1905.

1. CONTRACT TO REPAIR—DELAY—SPECIAL DAMAGES.—A manufacturer which undertakes to repair a piece of machinery which constitutes a part of the motive power of a sawmill cannot be held liable for special damages for the value of such machinery, as part of the sawmill, where it is not shown that such manufacturer had notice how the machinery was used. (Page 471.)

2. LABORER'S LIEN—RIGHT TO POSSESSION.—One who repairs machinery has a lien thereon for work and labor performed, and is entitled to possession of it until such lien is satisfied by payment or tender. (Page 472.)

Appeal from Ashley Circuit Court.

ZACHARIAH T. WOOD, Judge.

Reversed.

*Austin & Danaher,* for appellant.

The elements of damages were speculative and too remote. 21 Ark. 431; 34 Ark. 184; 36 Ark. 260; 39 Ark. 387; 42 Ark. 97. Appellant had the right to hold the cylinder, under its lien, until the repair charges were paid. Kirby's Dig. § § 5011, 5017, 5018.

BATTLE, J. "Boling & Brother shipped from Hamburg to Pine Bluff Iron Works, Pine Bluff, Ark., an engine cylinder to be repaired. They did not send any letter or other notice of the intended shipment, but asked their friend, W. E. Kittrell, to write, telling appellant what repairs to make on the cylinder. Kittrell wrote the letter as requested, and appellant repaired the cylinder, charged the repair bill of $12.42 to Kittrell, and on January 24, 1902, shipped the cylinder back to Kittrell at Hamburg, sending it under a "shipper's order bill of lading," which appellant attached to a draft on Kittrell for $126.27, being the amount due from Kittrell to appellant, including the $12.42 for repairs on the cylinder in controversy.

"Just before the return shipment of the cylinder, Kittrell wrote to appellant, saying that the cylinder had been sent by and belonged to Boling & Brother, and that Kittrell was not responsible for the repairs. This letter is dated January 23. The evidence does not show that this letter ever reached appellant, but from the way mails are carried, which was familar to the jury, the letter could not have reached appellant until late in the afternoon of the 24th, the day the cylinder was shipped. On February 1 R. S. Boling wrote to appellant that he was the owner of the cylinder, and complained of its having been returned with bill of lading attached to a draft on Kittrell. Appellant replied, referring Boling to Kittrell, saying Kittrell had ordered the work done, and to him they looked for a settlement of the repair bill.

Without further ado Boling & Brother then replevied the cylinder, without having paid or tendered the repair charges to appellant.

"Upon the measure of damages, R. S. Boling testified that he was kept out of the use of the cylinder eight days by reason of appellant's action; that the only attempt he ever made to pay the repair charges was to offer the railroad company's agent $15. He likewise testified that he was engaged in running a sawmill; that the engine of which the cylinder was a part was the motive power of the mill; that his mill was necessarily shut down while the cylinder was delayed. All of this testimony was objected to by defendant, and exceptions duly saved. He was further asked, over defendant's objection, this question: 'What was the usable value of that piece of machinery a day to you?'

"W. E. Kittrell was asked and permitted to answer similar questions, and gave similar testimony. The court instructed witness Kittrell on this part of his testimony as follows: 'You may take into consideration the purpose for which it was used, and say what the cash value of that cylinder was to that mill per day.' The witness answered: 'Not less than $10, nor more than $20 per day.' R. S. Boling, in answer to similar question and under similar instructions from the court, likewise testified that the value of the cylinder per day to the mill was $12 to $15. On cross-examination, both of these witnesses (Kittrell and Boling) testified that the cylinder was worth about $40, and that $40 per year would be a big rental value for it. The two Bolings and Kittrell were also permitted to testify, over appellant's objection, as to the character of the mill operated by plaintiffs.

"John L. Mills, witness for the defendant, testified that the rental value of the pieces of machinery was not over $2.50 per month."

The jury returned a verdict in favor of the plaintiff for the cylinder and $75 damages; and the defendant appealed.

The testimony of Boling and Kittrell as to the value of the cylinder to plaintiffs as a part of their sawmill was incompetent, and should not have been admitted. There is nothing in the record to show that appellant had any notice or knowledge that it was a part of an engine used in running a sawmill, or how it

was used. Appellee was not, therefore, entitled to special damages on that account. *Hooks Smelting Company* v. *Planters' Compress Company, 72* Ark. 275.

Appellant had a lien on the cylinder for work and labor performed thereon, and was entitled to possession of it until such lien was satisfied by payment or tender. 1 Jones on Liens, (2d Ed.), § § 731, 732, 745, and cases cited.

Reverse and remand for a new trial.