NORFOLK SOUTHERN RAILROAD COMPANY v. A. B. HOUTZ
AND FOREMAN-BLADES LUMBER COMPANY.

(Filed 12 September, 1923.)

1. **Carriers of Freight — Wrongful Delivery — Damages — Notice — Evidence—Questions for Jury.**

Where there is evidence tending to show that the carrier had delivered to a third person a shipment of logs, who had used them, and that these logs were intended to be used by the consignee for mine props of a higher market value than mill logs, and the evidence is conflicting as to their suitability as mine props, it is reversible error, in the carrier's action against such third person and the consignee for an adjustment of its liability, for the court to instruct the jury that the liability of such third person to the carrier depended upon notice either to the carrier, or to him, that the logs were intended for mine props, it being for the jury to determine, under conflicting evidence, the suitability of the shipment for mill logs or mine props, and answer the issue as to the carrier's damages according to their market value at destination, considering the evidence as to the prepayment of the freight.

**2. Same—Instructions—Appeal and Error.**

> *Held,* under the evidence of this case, the conflict in the charge as to notice and the recovery of damages for the greater value of the logs as mill props, was reversible error, to the carrier's prejudice.

APPEAL by plaintiff from *Connor, J.,* at February Term, 1923, of PASQUOTANK.

Civil action.

On 31 August, 1920, W. E. Blount shipped from Mackeys, over the plaintiff's road, two car-loads of logs to A. B. Houtz at Elizabeth City. The logs arrived there on 1 September, 1920, and, by mistake, were delivered to and used by the Foreman-Blades Lumber Company. Houtz demanded of the plaintiff $312.23, the alleged value of the logs, with interest from 1 September, 1920, and the plaintiff in its complaint demanded the same amount of the Foreman-Blades Company, who contended that the value of the logs was only $197.08, and admitted its liability to the plaintiff for this amount. The issues were answered as follows:

1. In what sum, if any, is Norfolk Southern Railroad Company indebted to A. B. Houtz? Answer: $312.23, with interest from 1 September, 1920.

2. In what sum, if any, is defendant, Foreman-Blades Lumber Company, indebted to Norfolk Southern Railroad Company? Answer: $197.08, without interest.

The plaintiff contended that there should be no difference in the answers.

Houtz recovered judgment against the plaintiff for $312.23, with interest from 1 September, 1920; and as the Foreman-Blades Lumber Company had paid into court for the benefit of the plaintiff $197.08, it was adjudged that the company recover its costs. The plaintiff appealed.

*Thompson & Wilson for the plaintiff.*
*W. A. Worth for A. B. Houtz.*
*Meekins & McMullan for the Lumber Company.*

ADAMS, J. The plaintiff excepted to each of the following instructions:

1. "I instruct you that, notwithstanding you may find that Mr. Houtz had had these logs cut for a purpose other than sawmill logs, to wit, mine props, if the logs were just as suitable for saw logs as for mine props, then the fact that Mr. Houtz intended them for a purpose that would give them a higher value would not be considered by you, unless you find that the railroad company was put on notice that these logs were mine props."

2. "The railroad company says that your answer to the second issue should be the same as your answer to the first issue, and I instruct you, gentlemen of the jury, that that would be true, provided you find that the same quantity of logs were delivered the Foreman-Blades Lumber Company as were received by the railroad company at Mackeys, and subject to my instruction to you with reference to the market price of logs and mine props. As between the railroad company and Foreman-Blades Lumber Company, I instruct you that there is no evidence from which you can find that these logs had any value as mine props, and your inquiry would be, what were the logs worth in the condition that they were when delivered by the railroad company to the Foreman-Blades Lumber Company? There is no evidence here from which you can find that for the purposes of the value that these were mine props with respect to this issue; but, gentlemen of the jury, you will consider all the evidence here to determine what that value is."

In giving these instructions, his Honor probably had in mind the law applicable to consequential damages or the loss of profits. Upon the first issue he permitted consideration of the "higher value" of the logs only in case the plaintiff had notice that they were mine props; and upon the second he withdrew from the jury all evidence of their value as props, and in effect confined the estimate to the market value of mill logs as the limit of the lumber company's liability. This, we think, was prejudicial to the plaintiff. True, it is held that in the absence of the carrier's actual or constructive notice that the claimant relies on special circumstances for damages additional to such as are the natural and probable result of the wrong, consequential damages cannot be recovered, whether the cause of action be treated as a breach of contract or as a negligent omission to perform a public duty arising out of contract. *Sharpe v. R. R.,* 130 N. C., 614; *Lee v. R. R.,* 136 N. C., 533; *Lewark v. R. R.,* 137 N. C., 384; *Development Co. v. R. R.,* 147 N. C., 504; *Furniture Co. v. Express Co.,* 148 N. C., 88; *Copper-smith v. R. R.,* 184 N. C., 26; *Causey v. Davis,* 185 N. C., 155.

But, according to the evidence as we understand it, the amount that may be recovered against the plaintiff or the lumber company is not necessarily dependent upon the question of notice. There is another theory upon which the controversy may turn. There was evidence tending to show that at the time the shipment was to be delivered, both mill logs and mine props had a market value, and that the value of the props was greater than that of the logs; that logs cut in multiples of eight and nine feet might be recut to the proper length for mine props; that the logs purchased by Houtz were cut for mine props according to specifications; that the lumber company was engaged in selling both

logs and props, and that props may be. cut into mill logs. There was other evidence tending to show that mine props are not cut under eighteen feet in length, and that the timber shipped was from twelve to sixteen feet in length and known as mill logs. In several particulars the evidence concerning these questions was inconsistent, if not conflicting.

It is therefore apparent that the jury should first find from the evidence whether the logs shipped to Houtz were mine props or mill logs, and then determine their market value at the place of destination at the time when they should have been delivered to the purchaser. If they were mine props and, as such, had a market value when they should have been delivered to Houtz, delivery by mistake to the lumber company did not alter either their quality or their value. The test is their value on the market. If, on the other hand, they were mill logs and not props, neither the plaintiff nor the lumber company would be liable for anything more than the market value of such logs. If they were suitable for either purpose, the want of notice to the plaintiff or to the lumber company of probable loss arising from special circumstances would not preclude the jury from considering the higher market value. The issues should be considered in accordance with these principles, and to this end a new trial is necessary. Of course, evidence as to the payment of freight charges, if any, must not be overlooked. Sutherland on Damages (3 Ed.), secs. 910, 1098; Hale on Damages, 252; *Howard v. Ross,* 3 N. C., 333; *Denby v. Hairston,* 8 N. C., 316; *Fowler v. Ins. Co.,* 74 N. C., 89; *Grubbs v. Ins. Co.,* 108 N. C., 472; *Hart v. R. R.,* 144 N. C., 91.

New trial.