522 P.2d 765

**CITY OF YUMA, a municipal corporation, Appellant,**

**v.**

**ARIZONA WATER COMPANY, Harris Trust and Savings Bank, and G. N. Askew, Appellees.**

**No. I CA–CIV 1705.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 30, 1974.

Rehearing Denied July 23, 1974.

Reviews Denied Sept. 19, 1974.

John B. Wisley, Jr., Yuma City Atty., Yuma, and Powers, Boutell, Fannin & Kurn, P. A. by James Powers, Phoenix, for appellant.

Fennemore, Craig, von Ammon & Udall by Kent A. Blake, Phoenix, for appellees.

J. LaMar Shelley, Gen. Counsel, The League of Arizona Cities and Towns, Mesa, amicus curiae.

## OPINION

EUBANK, Judge.

This is a second appeal resulting from the appellant-City of Yuma's condemnation of the appellee-Water Company's water

plant and property serving the city. The first appeal is reported at Arizona Water Co. v. City of Yuma, 7 Ariz.App. 53, 436 P.2d 147 (1968).

In the first appeal the jury was concerned with determining the "fair and equitable value of such [water] plant and property, including its value as a going concern" and severance damage, if any. A.R.S. § 9–518 B., as amended. The jury found that the fair and equitable value of the water plant and property was $4,-999,213, including $50,000 for severance damages, $90,000 for the water rights, and $175,000 for "going concern" value, and its verdict was affirmed by this Court.

This second appeal results from a second trial made necessary by A.R.S. § 9–518 D., as amended. This section grants the condemning authority the option of either paying the first judgment and being placed into possession of the water plant and property, or rejecting the judgment, dismissing the condemnation action, and paying all of the Water Company's trial expenses. If the condemning authority opts to pay the judgment, as the City of Yuma did here, they are placed in possession of water plant and property by the trial court under a statutory bond in favor of the Water Company, until such time as a second trial is held to determine the "fair and equitable value" to be paid for the "additions, betterments, improvements and extensions" required to be made to the water plant by the Water Company between the date of the commencement of the first trial and the date of actual possession by the condemning authority. A.R.S. § 9–518.F and I, as amended. In the case at bar it was stipulated that this valuation period ran from January 1, 1963 through July 19, 1968, or approximately five and one-half years.

The second trial began on March 24, 1970, before the trial judge, sitting without a jury, and was completed on the following day. On February 1, 1971, the court filed its findings, conclusions of law and judgment awarding the appellee Water Compa-

ny $1,111,451, included in this judgment was the sum of $1,101,451 awarded as the fair and equitable value of the additions, betterments, improvements and extensions to the water plant. This latter-mentioned sum included $41,000 as going concern value over and above that awarded in the first judgment and a credit of $32,637.40 to the City for the salvage value of "retirements" made during the valuation period. An additional $10,000 was stipulated to be paid to the Water Company by the City for maps which when added made the net judgment $1,111,451. The record shows that the trial court adopted exactly the approach to value and opinion of the Water Company's expert witness, John E. Housiaux, in its findings, conclusions of law and judgment. The City of Yuma, hereafter "City" appeals from the judgment.

■ The City first contends that historical cost or actual cost of additions and betterments constitutes insufficient evidence upon which to support a finding of fair and equitable value of such additions and betterments to the water plant. In theory, we agree. Unless the *res* to be valued is valued within a relatively short time of its purchase, its real value or fair market value may have little or no relationship to its original or actual cost. *See* City of Phoenix v. Consolidated Water Co., 101 Ariz. 43, 47, 415 P.2d 866, 870 (1966). However, in the matter *sub judice all* experts for *all* parties relied on original or actual cost data to some extent in their respective approaches to value without objection by either side. In any regard, this reliance on original or actual cost data could not be considered error since the legislature in A.R.S. § 9–518 E., as amended, has specifically authorized the finder of fact to consider the actual cost reports at the second trial.

■■ The City next claims error based on the fact that the judgment was computed by aggregating separate elements from two different appraisal theories or techniques. The basis of this argument is that both of the Water Company's expert wit-

nesses testified that their respective opinions of fair and equitable value were based on the assumption that title to the water plant and facilities vested in the City as of December 31, 1962, and that as owner of the property for the valuation period from January 1, 1963 through July 19, 1968, the City would have to bear the burden of the *retirements*. Retirements are defined as property in existence in the water system inventoried and appraised, as of December 31, 1962, for the first trial that went out of the system by the time of the 1968 valuation date. The effect of these assumptions was for expert Polenske to reject entirely from his opinion of value *any* value for the $151,663.89 (original cost) retirements, while expert Housiaux allowed the City a credit or offset in the sum of $32,637.40 for the retirements' salvage value. This latter approach to value was adopted by the trial court in its findings. We agree with the City that both assumptions made by the Water Company experts were erroneous.

Our Supreme Court noted in Desert Waters, Inc. v. Superior Court, 91 Ariz. 163, 370 P.2d 652 (1962) that A.R.S. § 9–518 was the specific eminent domain statute and A.R.S. § 12–1111 et seq., were the general statutes in the situation where a city condemns a water plant and property. The special statutes do not treat the point in time when title to the condemned utility vests in the city. The general statute, A.R.S. § 12–1126, as amended, provides that when the final judgment has been satisfied, the court shall make a final order of condemnation, describing the property condemned and the purposes of the condemnation, and that when a copy of that order is recorded with the county recorder "thereupon the property described shall vest." We believe that the latter or general statute governs this case. Our review of the record shows only a partial satisfaction of the second judgment and no entry of a final order of condemnation. Therefore as a matter of law, title to the condemned property was not vested in the City as of December 31, 1962, and has not vested to this day. The burden of the retirements, under the Polenske and Housiaux approach to value, must then be borne by the appellee Water Company. The question then is whether there is evidence in the record upon which to base an adjustment of this error or must we reverse and remand this matter for a new trial?

Our review of the record shows that there is evidence on this question. The City's expert, I. G. Parsons, testified that in his opinion the total water system retirements for reproduction cost less depreciation purposes was $168,948, later adjusted to $166,989. In our opinion this is a "fair and equitable" approach to value since the retirements were included in the initial judgment and already purchased by the City on the basis of reproduction cost less depreciation and should, logically, be removed from the system as "retirements" on the same basis of value. In eminent domain cases it must be remembered that Art. 2, § 17 of the Arizona Constitution, 1 A.R.S. requires the payment of "just compensation", which has been held by our Supreme Court to be synonymous with "fair and equitable value" and "fair market value". These terms are defined by asking the question: what price would a willing informed buyer pay for the water plant and what price would a willing informed seller sell the water plant for? City of Phoenix v. Consolidated Water Co., 101 Ariz. 43, 415 P.2d 866 (1966). We believe that the willing informed buyer would insist on consistent and uniform handling of "retirements".

Since we hold that an adjustment in the judgment must be made and since the trial court, relying on Housiaux's opinion of value, has already credited the City with $32,637.40 salvage value of the retirements, we must credit the City with $166,989 and credit the appellee Water Company with $32,637.40 in order to place the ownership burden of the retirements on the Water Company. This adjustment results in a net $134,351.60 credit to the City.

■ The City and *amicus curiae* both contend that the trial court erred in awarding $41,000, or any amount for that matter, as "going concern" value[1] since A.R.S. § 9–518.I, as amended, does not provide for such an award at the second trial. Although we tend to agree with the City and *amicus,* we do not consider such an award error in this case, since *all* of the expert witnesses, including the City's, gave opinions concerning "going concern" value of the additions and betterments, since no objection was made to such evidence, and since the valuation period of five and one-half years was of such a lengthy period that the full effect of "going concern" value awarded in the first judgment conceivably would not have been included and anticipated in the first judgment. Our reading of A.R.S. § 9–518, as amended, and § 9–518.I, as amended, in particular, seems to contemplate a much speedier resolution of the issues than was possible in this case with its multiple appeals.

■ The City also claims error based upon the court's inclusion in its judgment of an award of $50,000 for hypothetical paving costs. The appellee's expert witness Housiaux testified that pavement costs *actually* incurred in projects during the valuation period were taken into account as expense items in his opinion of value, but that as of the valuation date he added an additional $50,000 expense item for pavement laid after certain water mains were installed, although such expenses were not actually incurred by the appellee. The appellee admits that this approach to value is "theoretical" but argues that such a cost item as hypothetical pavement cutting was held to be a proper item to be included in a reproduction cost study in City of Phoenix v. Consolidated Water Co., supra. This is correct, with one great exception: In City of Phoenix the issue of pavement cut expense was raised in the *first* trial where the issue was the "fair and equitable value of such [water] plant and property" including its *going concern value* and severance damage, if any, and not at a *second* trial, such as this one, where the "fair and equitable value" of the "additions, betterments, improvements and extensions" was involved.

We agree with the City that such an award should not have been included in the judgment since such hypothetical cost was not actually made by the appellee and in any respect, would be included in the judgment as part of the "going concern" value. It is our opinion that the City is entitled to an additional credit of $50,000.

The City also questions the sufficiency of the evidence to sustain the award. We have reviewed the record, and are of the opinion that the evidence supports the judgment, as modified by this opinion.

Other collateral questions are raised which we believe are sufficiently disposed of by our opinion above.

The judgment of the trial court signed on February 1, 1971, is modified by reducing it from $1,111,451 to $927,099.40 ($134,-351.60 credit for retirements plus $50,000 credit for hypothetical pavement cut). In all other respects the judgment is affirmed.

JACOBSON, C. J., Division 1, and HAIRE, P. J., concur in the result.

1. For a definition of "going concern value", See City of Phoenix v. Consolidated Water Co., supra; City of Tucson v. El Rio Water Co., 101 Ariz. 49, 415 P.2d 872 (1966);

2 Orgel, Valuation Under the Law of Eminent Domain, § 216 (1953); Law Note: Kashman, Going Concern Value of a Public Utility, 6 Ariz.L.Rev. 92 (1964).