838 P.2d 1310

**STATE of Arizona, Appellee,**

v.

**Roy Furnit ELLIS, Appellant.**

**No. 1 CA–CR 90–906.**

Court of Appeals of Arizona, Division 1, Department C.

March 10, 1992.

Review Denied Nov. 3, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Dennis Staffelbach, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul C. Klapper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

■ In this case, we hold that in assessing restitution for a loss of personal property, the measure of the victim's full economic loss is the fair market value of the property at the time of the loss. The judge has discretion to use other measures of economic loss when fair market value will not make the victim whole.

The defendant was convicted of trafficking in stolen property. The victim testified that he had lost the following items: a pool cue which he had purchased used five years earlier for which he had paid $250; a sports jacket which was three years old and which had cost $90 new; a vinyl attache case which was three or four years old and which originally cost $50; two sports shirts which were a year old and for which he had paid $25 each; a two-year-old hair dryer which had cost $25; a five-year-old blanket that had cost $25; an overnight case which was over a year old and had cost $15; gasoline in the amount of $5 and personal toiletries worth about $14.

The trial court did not consider the request of defense counsel that the age of the items of property be considered in placing a value on them, but instead assessed restitution based on the purchase price of the property. This was error because, as we have already indicated, the standard for assessing restitution for personal property is the fair market value of the property at the time of the loss. We remand so that restitution may be assessed on that basis.

■ Arizona Revised Statutes Annotated ("A.R.S.") § 13–603(C) provides that a court shall require a person convicted of an offense to pay restitution to the victim in the full amount of the economic loss. The purpose of restitution is to make the victim whole, not to punish. *State v. Howard,* 163 Ariz. 47, 785 P.2d 1235 (App.1990). Nor is the purpose to give the victim a windfall. *See State v. Iniguez,* 169 Ariz. 533, 821 P.2d 194 (App.1991), *petition for review pending.* Nothing in the statutes or Arizona case law, however, prescribes

the standard to apply in calculating restitution.

Fair market value appears to be the most common standard used in other jurisdictions. *See, e.g., State v. Curtis,* 140 Vt. 621, 443 A.2d 454 (1982); *People v. Hamilton,* 198 Ill.App.3d 108, 144 Ill.Dec. 426, 555 N.E.2d 785 (1990); *State v. Hinckley,* 13 Kan.App.2d 417, 777 P.2d 857 (1989); *Sutton v. State,* 190 Ga.App. 56, 378 S.E.2d 491 (1989); and *State v. Maynard,* 79 N.C.App. 451, 339 S.E.2d 666 (1986). Some states mandate a particular standard by statute. California uses replacement cost, West Ann.Cal.Penal Code § 1203.04(d) and *see People v. Vournazos,* 198 Cal.App.3d 948, 244 Cal.Rptr. 82 (1988); so does Wisconsin, unless fair market value is greater. W.S.A. § 973.20(2) and *see State v. Boffer,* 158 Wis.2d 655, 462 N.W.2d 906 (App.1990). Delaware follows a similar formula. 11 Del.C. § 4106(a), (b) and (d) and § 224, and *see Pratt v. State,* 486 A.2d 1154 (Del. 1983).

In most cases, the fair market value of the victim's property at the time of the loss will realistically reflect the actual loss. Evidence on fair market value may include, among other things, whether the property was new when purchased, the original purchase price, how much time the owner has had the use of the property and the condition of the property at the time of the theft. *See State v. Jones,* 104 Ariz. 14, 448 P.2d 70 (1968) (discussing fair market value of stolen property in the context of the degree of crime committed).

 Fair market value will not always be the appropriate standard. A court has wide discretion in setting restitution based on the facts of each case. *State v. Scroggins,* 168 Ariz. 8, 810 P.2d 631 (App.1991). In *State v. Hawthorne,* 573 So.2d 330 (Fla. 1991), the Florida court pointed out that there are instances when the fair market value of the items stolen may not accurately reflect the victim's loss. A new car depreciates the moment it leaves the car lot and if it is stolen soon after it is purchased, awarding the fair market value of the car would not make the victim whole. *See id.* at 333. So too, items of personal clothing

depreciate drastically almost as soon as they are worn. In such cases it would be appropriate to award the victim the purchase price of his loss. So too, some items of property may be so unique as to have no readily ascertainable fair market value. In such cases, the original purchase price, or even the replacement cost might be considered. *See State v. Robinson,* 4 Kan. App.2d 428, 608 P.2d 1014 (1980); *People v. Renfro,* 250 Cal.App.2d 921, 58 Cal.Rptr. 832 (1967); and *State v. Clark,* 13 Wash. App. 782, 537 P.2d 820 (1975), all of which hold that in determining whether a theft is a felony or misdemeanor the value of the property taken must be measured by its fair market value, but that if property is unique or has a restricted use so that there is no market for it, the trier of fact may consider the replacement cost of the property. Since it is impossible to foresee all of the circumstances of every loss, we mention the foregoing only as examples of when a departure from the usual fair market value standard may be appropriate.

The facts of this case call for a consideration of the fair market value of the items stolen. We believe that there is enough in the record to allow the judge to make a common sense decision applying that standard. Should, however, the victim or the defendant wish to be heard anew on this issue, they have that right.

This court has, pursuant to A.R.S. § 13–4035, fully reviewed the record for fundamental error. After reviewing the record, we find that no other reversible error was committed in these proceedings.

The trial court's order for restitution is vacated, and this case is remanded for reconsideration of the amount of restitution. The judgment of guilt and sentence imposed are otherwise affirmed.

GRANT, P.J., concurs.

EUBANK, Judge, dissenting.

I dissent from the majority opinion. The opinion states that "[n]othing in the statutes or Arizona case law ... prescribes the standard to apply in calculating restitution." However, in 1986 the legislature

amended A.R.S. § 13–105 by adding paragraph (11), which defined "economic loss" as follows:

> "Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

1986 Ariz.Sess.Laws 858, 859 ("Chapter 248"). In the same act, they amended A.R.S. § 13–603(C) by striking "after consideration of the economic circumstances of the convicted person" and adding "pursuant to Chapter 8 of this title." Chapter 248 at 861. (Chapter 8 establishes procedures for the state and victims to recover fines and restitution.) The legislature also amended A.R.S. § 13–804, in the same act, by adding subparagraphs (B) and (C), which read:

> B. In ordering restitution for economic loss pursuant to section 13–603, subsection C or subsection A of this section, the court shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted.
>
> C. The court shall not consider the economic circumstances of the defendant in determining the amount of restitution.

Chapter 248 at 861.

The title to chapter 248 reads in part:

### AN ACT

Relating to crimes; prescribing procedures for restitution to victims for offenses causing economic loss; prescribing definitions of calendar year and economic loss; prescribing hearings and restitution orders; prescribing jurisdiction of trial court; prescribing restitution lien, contents and filing; precluding denial of essential allegations in civil proceeding if defendant was criminally convicted; prescribing condition of probation; prescribing priority of payments; prescribing consequences of nonpayment of fines or restitution; ....

Chapter 248 at 858.

Thus, it appears clear to me that the legislature intended for the trial judge to award a victim restitution in the amount of "economic loss," not "fair market value" as determined by the majority opinion.

The difference between the two concepts is important. "Fair market value" is a term of art that relates to the price that a willing buyer would pay and a willing seller would take, both knowing all of the surrounding circumstances on a particular date in a hypothetical market. The definition was developed as a means of determining "just compensation" in eminent domain cases. *See, e.g., Defnet Land & Inv. Co. v. State,* 103 Ariz. 388, 389, 442 P.2d 835, 836 (1968); *City of Phoenix v. Consolidated Water Co.,* 101 Ariz. 43, 45, 415 P.2d 866, 868 (1966); *City of Yuma v. Arizona Water Co.,* 22 Ariz.App. 4, 7, 522 P.2d 765, 768 (1974).

In *Honeywell Information Systems, Inc. v. Maricopa County,* 118 Ariz. 171, 174, 575 P.2d 801, 804 (App.1977), a personal property tax case, we defined "fair market value" as follows:

> The test of fair market value is not necessarily what an appraiser thinks the property is worth but rather what the property would sell for between a willing buyer and a willing seller in an arms-length transaction. The sales price at which the same or similar property is offered for sale is ordinarily viewed as the most significant indicator of fair market value. That is why the appellees themselves relied on sales prices as a method of valuing the property involved here. It is apparent that the argument that proof of sales price is insufficient and that appraisal evidence was necessary is incorrect.

In a Social Security Act (assistance to defendant children) case, where the parents' "resources" determined eligibility, we defined "fair market value" as:

> "Based on the foregoing, it is our opinion that the term 'fair market value' of resources as used in the various state

welfare eligibility statutes means the fair market value of the owner's interest in the property after deduction of the amount of the outstanding and unpaid mortgage, lien, encumbrance or security interest."

*Begay v. Graham,* 18 Ariz.App. 336, 339–40, 501 P.2d 964, 967–68 (1972) (quoting Op. Att'y Gen. No. 69–25 (R–98) (Sept. 30, 1969)).

The majority would limit a victim's restitution to "fair market value," while I believe the legislature intended to cover losses well beyond that concept of value. The legislature intended the trial court to award the victim restitution for *"any loss incurred by a person as a result of the commission of an offense,"* including "lost interest, lost earnings and other losses which would not have been incurred but for the offense." A.R.S. § 13–105(11) (1989) (emphasis added); *see id.* § 13–804(B), (C). This is the concept of "economic loss"; it is not the concept of "fair market value."

I would affirm the trial court's award of restitution.