NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

ALEX ROBINSON DANIELS, *Appellant*.

No. 1 CA-CR 16-0084
No. 1 CA-CR 16-0085
(Consolidated)
FILED 1-10-2017

---

Appeal from the Superior Court in Maricopa County
No.  CR2015-119261-001
CR2013-002007-001
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Paul J. McMurdie joined.

---

**T H O M P S O N**, Judge:

¶1        Alex Robinson Daniels (defendant) appeals his conviction and sentence in CR2015-119261-001 for second degree trafficking in stolen property.  He argues the trial court improperly gave the jury a permissive inference instruction and erred in allowing the jury to consider extrinsic evidence.  Defendant also challenges the trial court's denial of his motion for mistrial.  For the following reasons, we affirm.[1]

### FACTS AND PROCEDURAL HISTORY

¶2        The victim discovered various items missing from her residence, including her cello, laptop computers, and her work ID badge. The victim's parents purchased the cello for her in 1996 for approximately $4,500.00.[2]   Defendant sold the cello for $125.00 to a retail store that buys

---

[1]      In Maricopa County Superior Court case number CR2013-002007-001, defendant pleaded guilty to three counts of voyeurism.  The superior court sentenced defendant to 1.5 years' incarceration for one count and suspended imposition of sentences on the remaining counts, ordering defendant be placed on 10-year concurrent terms of probation.  Based on the guilty verdict in CR2015-119261-001, defendant's probation in CR2013-002007-001 was revoked and concurrent 1.5-year prison terms were imposed for two counts of voyeurism.  The court ordered those terms served consecutively to the prison term imposed in CR2015-119261-001. Defendant appealed from the finding of probation violation and disposition, and this court consolidated the appeals in both superior court matters.  On appeal, defendant raises no issues separately challenging the probation revocation and disposition; thus, because we affirm defendant's conviction and sentence in CR2015-119261-001, we also affirm the probation revocation and disposition in CR2013-002007-001.

[2]      The parties incorrectly assert the trial court sustained defendant's objection to the question that elicited this testimony.  The transcript reflects

and resells secondhand books and other entertainment merchandise. As a store employee completed paperwork documenting the transaction, defendant falsely suggested he obtained the cello when he was a band student in high school and he asked to play it at the store "one last time." Police discovered the victim's laptops, paperwork, mail, and work ID in the trunk of defendant's vehicle and her phone in the glovebox.

¶3 The state indicted defendant on three charges related to residential burglary and the sale of the cello. The court subsequently severed the two burglary counts from the trafficking in stolen property count. The jury found defendant guilty of second degree trafficking in stolen property. Defendant thereafter pleaded guilty to theft in exchange for dismissal of the burglary charges. The court imposed concurrent terms of 4.5 years' and 11.25 years' incarceration, respectively, for the theft and trafficking convictions, with 290 days' presentence incarceration credit for both. Defendant timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) (2016), 13-4031 (2016), and -4033(A)(1) (2016).[3]

## DISCUSSION

¶4 On appeal, we view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2, 340 P.3d 1110, 1112 n. 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495, 924 P.2d 497, 499 (App. 1996)).

I.    Jury Instruction

¶5 Over defendant's objection, the court instructed the jury, as requested by the state:

> The defendant has been accused of trafficking in stolen property by selling property of another knowing that the property was stolen.

---

that the court sustained defendant's objection to the victim speculating about the "probabl[e]" appreciation of the cello's value after it was purchased in 1996.

[3] Absent material changes from the relevant date, we cite a statute's current version.

. . .

> Proof of the sale of stolen property at a price substantially below its fair market value, unless satisfactorily explained, may give rise to an inference that the defendant was aware of the risk that it had been stolen.
>
> You are free to accept or reject [this] inference[] as triers of fact. You must determine whether the facts and circumstances shown by the evidence in this case warrant any inference that the law permits you to make. Even with the inference, the State has the burden of proving each and every element of the offense of trafficking in stolen property beyond a reasonable doubt before you can find the defendant guilty.

¶6        Defendant argues the court abused its discretion in giving the inference instruction because the only evidence of the cello's fair market value was provided by the store's employee who testified the store paid defendant $125.00 in exchange for the cello.[4]  We review a trial court's decision to give a jury instruction for an abuse of discretion. *State v. Dann*, 220 Ariz. 351, 363-64, ¶ 51, 207 P.3d 604, 616-17 (2009).

¶7        We find no abuse of discretion. The victim testified that her parents bought her the cello in 1996 for approximately $4,500.00; thus, defendant's sale of the cello for $125.00 was not the only evidence of the instrument's fair market value. *See State v. Ellis*, 172 Ariz. 549, 551, 838 P.2d 1310, 1312 (App. 1992) (noting evidence of stolen property's fair market value includes original purchase price). Furthermore, we are unaware of any authority suggesting that the price a retail store pays for used personal property, which the store in turn sells to earn a profit, properly reflects the property's fair market value. Defendant was free to argue, and he did so, that the $125.00 sales price represented the cello's fair market value. But the jury, based on the permissive nature of the inference instruction, was free to accept or reject defendant's argument.

¶8        Finally, any error in instructing the jury on the inference to be drawn from the cello's fair market value and its $125.00 sale was harmless. Considerable other evidence allowed the jury to infer defendant was aware the cello was stolen when he sold it. *See  State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) ("Error, be it constitutional or otherwise, is

---

[4]        Defendant does not argue that the given instruction misstates the law.

harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict.") (citation omitted); *State v. Shearer*, 164 Ariz. 329, 339-40, 793 P.2d 86, 96-97 (App. 1989) (holding that the introduction of inadmissible evidence was harmless error when it was cumulative to and consistent with other trial testimony). For example, defendant misled the store employee into believing he lawfully owned the cello, and the victim's other stolen property was found in defendant's vehicle.

II.      Extrinsic Evidence

**¶9**          During the victim's testimony, the state showed her a copy of the certificate of purchase that her parents received when they bought the cello (Exhibit 3). When the state requested permission to publish Exhibit 3, defendant objected on hearsay grounds, and a bench conference ensued. The court overruled the objection, but the state nonetheless agreed not to publish Exhibit 3, and the document was not admitted into evidence. Exhibit 3 was, however, transmitted to this court with the trial record.[5]

**¶10**          Defendant argues the trial court erred in permitting the jury to consider Exhibit 3 during deliberations. We reject this argument. Defendant does not identify anything in the record that establishes the jury actually received and considered Exhibit 3. In fact, the record reflects otherwise. Immediately prior to releasing the jury to deliberate, the court informed the jurors: "You'll go back to the jury room with the form of verdict as well as the exhibits that have been admitted." On this record, we will not presume error, much less reversible error. *Cf. State v. Hall,* 204 Ariz. 442, 447, ¶ 16, 65 P.3d 90, 95 (2003) ("Once the defendant shows that the jury has received and considered extrinsic evidence, prejudice must be presumed[.]").

III.      Motions for Mistrial

**¶11**          When the court clerk commenced reading the indictment for the jury at the beginning of trial, she included the burglary counts. The prosecutor realized the mistake, and, before the clerk could proceed to reading the factual allegations supporting the charged offenses, he interrupted and, at a sidebar, reminded the court that defendant was facing only the trafficking in stolen property count at this trial. The court informed the jury that the "wrong document" had just been read and ordered the

---

[5]      We note that this court regularly, and properly, receives exhibits that are offered but not admitted into evidence at trial.

jurors to "disregard it[.]" The clerk then read the "right indictment." The court dismissed the jury for the evening recess, and defendant moved for a mistrial based on the reading of the incorrect offenses. The court denied the motion. Defendant unsuccessfully renewed his motion at the start of the next trial day and again during the following trial day.

¶12 Defendant argues the court erred in denying his repeated requests for a mistrial. We disagree. The court took appropriate corrective measures by informing the jury that the "wrong document" was read and admonishing the jury to disregard it. We find no reversible error.

## CONCLUSION

¶13 Defendant's conviction for trafficking in stolen property and resulting sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA